Bobby Borisov
13596 Hatchet Place
Fontana, CA 92336
310-498-4989
Bobby@bbiholdings.com

Plaintiff in Pro Se

FILED
2020 JUL -2 AM 10:06
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE
BY AP

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY BORISOV, AN INDIVIDUAL<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; and Does 1 through 10, inclusive<br><br>Defendants. | Case No.: EDCV20-01337 JGB(SHKx)<br><br>**COMPLAINT**<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiff, Bobby Borisov ("Plaintiff"), alleges the following against Defendant Wells Fargo & Company and Wells Fargo Bank, N.A. and Does 1 through 10, inclusive (collectively, "Defendants"), and in support thereof, avers as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action because the parties are citizens of different counties and the controversy exceeds the value of $75,000.

2. This Court has personal jurisdiction over Defendants because they transact a substantial amount of business in this state.

3. Venue is proper int his judicial district because a substantial amount of the transactions at issue occurred in this district.

FEE PAID

## PARTIES

4. Plaintiff, BOBBY BORISOV, is an individual and a small business owner residing in Fontana, California. Plaintiff operates a factory in the city of Riverside, California, called BB Encore.

5. Because Plaintiff satisfied the eligibility requirements for the assistance provided by the PPP loans, Plaintiff submitted an application through Wells Fargo. However, due to Wells Fargo's wrongful conduct, as alleged herein, Plaintiff's loan application was not timely or properly processed, causing the loan to be denied and jeopardizing Plaintiff's business and ultimately causing its collapse.

6. Defendant WELLS FARGO & COMPANY is a California Corporation, whose primary place of business is 420 Montgomery Street San Francisco, CA 94104.

7. Defendant WELLS FARGO BANK, N.A., is a bank and the main subsidiary of WELLS FARGO & COMPANY, also headquartered at 420 Montgomery Street San Francisco, CA 94104.

8. Plaintiff does not know the true names and legal capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges, that each of the Defendants designated herein as Does, are legally responsible in some manner for the events and happenings herein referred and for causing the injuries and damages as herein alleged. Plaintiff will seek leave of Court to amend his Complaint to allege the true names and/or capacities of such fictitiously named Defendants once ascertained.

## INTRODUCTORY ALLEGATIONS

9. Wells Fargo, fresh on the heels of being forced to pay $3 billion to resolve an egregious "fake account" scandal designed by the senior executives of the Company to maximize profits at the expense of innocent consumers, has engaged in yet another scam motivated by the Company's endless greed. This time the wrongful conduct is equally despicable and unlawful – manipulating the CARES Act Paycheck Protection Program ("PPP").

10. Wells Fargo's present misconduct is eerily similar to its previous alleged offenses, as they both involve manipulation the sequence of transactions or applications in order to maximize its profits.

11. On March 27, 2020, the President of the United States signed the Coronavirus Aid Relief and Economic Security Act (the CARES Act) (Pub. L. 116-136) into law, providing relief to the stock market, banks and ostensibly to small businesses. However, while the government can, on a moment's notice, create and distribute money to prop up capital markets and large banking institutions through the federal reserve, no such mechanism exists to provide assistance to small businesses.

12. Thus, as part of the CARES Act, Congress appropriated over $340 billion in funds to the Small Business Administration ("SBA"), so that small business could obtain loans to cover payroll and avoid massive layoffs attendant to the COVID-19 crisis through existing programs which require banks to act as intermediaries. The $349 billion in aid is commonly known as the Payroll Protection Act.

13. The CARES Act gave the SBA rulemaking authority as to the administration and distribution of PPP loans which began to be dispersed on April 3, 2020.

14. On April 16, 2020 the SBA reported that the entirety of the $349 billion appropriated had been disposed of, less than two weeks after the funds became available.

15. Defendant Wells Fargo is one of the largest banking institutions in the United States with over $1.9 trillion in assets and over 15 million customers, including businesses large and small.

16. On April 2, 2020, the SBA announced that it would begin accepting PPP Applications on April 3, 2020.

17. Soon thereafter, Wells Fargo initially limited applications to those business who had a pre-existing lending relationship with the Company and/or prioritized loan applications from larger companies seeking higher loan amounts because processing those applications first generated larger loan origination fees for the institution.

18. The next statement made by Wells Fargo expressed that it "will expand its participation in the Paycheck Protection Program and offer loans to a broader set of its small business and nonprofit customers subject to the terms of the program" was an affirmative representation that Wells Fargo would focus its attention on "its small business and nonprofit customers" and would conform its conduct to the "terms of the program" including processing applications on a first-come, first-served basis.

19. Wells Fargo desired to participate in the PPP program because the program offered it large commissions of between 1-5% of the loan amount. This represented a very attractive opportunity for Wells Fargo since the loans were risk-free due to the fact that they are guaranteed by the SBA and the federal government. The United States Treasury stated the following when rolling out the PPP:

a. "Are these loans guaranteed by the SBA? Yes, the SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States." (*See* United States Treasury, "PAYCHECK PROTECTION PROGRAM INFORMATION SHEET FOR LENDERS" available at https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.)

20. The commission of 1-5% of the loan amount was calculated according to the following schedule given to lenders by the United States Treasury

a. How will lenders be compensated? Processing fees will be based on the balance of the financing outstanding at the time of final disbursement. SBA will pay lenders fees for processing PPP loans in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

21. Smaller loans resulted in smaller commissions for Wells Fargo (the percentage of the commission for smaller loan amounts was nominally greater than that for higher loan amounts for the very reason that a higher absolute commission is earned on higher loan

amounts). In addition to the fact that smaller loans resulted in smaller commissions, Wells Fargo was aware that small loans required a substantial larger amount of work to process.

22. The result of Wells Fargo's conduct was that small and minority-owned business, those form whom the PPP program was designed for, were shut out from the loans.

23. Wells Fargo failed to disclose that it was only favoring its existing big customers with pre-existing lending relationships with the Company, and that it was processing the PPP applications it received in such a manner as to maximize its commissions with the least amount of work in order to make the bank the most money.

24. Had Wells Fargo complied with the law, small businesses such as Plaintiff's could have submitted their PPP applications to other financial institutions that were processing applications on a first-come, first-served basis.

25. Plaintiff registered with Wells Fargo on April 7, 2020 after he was unable to register sooner due to the lack of communication from the institution that the link was live on April 2, 2020.

26. When Plaintiff attempted to register on April 5, 2020, he was told the link had gone live on April 2, 2020 and had since been down due to too many applications flooding the site. Plaintiff was finally able to register on April 7, 2020.

27. After the registering and filling out a form that explained why he was interested in a PPP loan he was able to submit an application on April 15, 2020.

28. On May 7, 2020 Plaintiff received an email that they required more documents which he then submitted and has since had no response.

29. Plaintiff, being a small business owner, was not knowledgeable about the PPP requirements or the additional required documentation.

30. It is Plaintiff's position that Wells Fargo manipulated the process of the loans which directly affected small businesses and negated the much-needed help that the PPP loans were created for in the first place.

## CAUSES OF ACTION

### For 40 U.S. Code §123

31. Plaintiff incorporates and re-alleges each and every allegation set forth above as if fully set forth herein.

32. Defendants were obligated to inform Plaintiff of all the information possessed by them that was relevant to Plaintiff's interest.

33. In addition, once Defendants communicated certain facts to Plaintiff, they were required to disclose additional facts necessary to avoid misleading Plaintiff.

34. At the same time, Defendants failed to disclose to Plaintiff that Wells Fargo did not intend to fulfill its promises, did not intend to adhere to the PPP regulations did not intend to process PPP loans on a first-come, first-served basis, and intended to prioritize higher value loans and/or "more important" customers.

35. As a result of Wells Fargo's unfair business practices and concealment of these material facts, Plaintiff's business that was entitled and could have received much needed assistance to keep them open and providing to the economy, is now forced to close.

### For Unjust Enrichment

36. Plaintiff incorporates and re-alleges each and every allegation set forth above as if fully set forth herein.

37. By their wrongful acts and omissions, Defendants were unjustly enriched at the expense of, and to the detriment of Plaintiff.

During these uncertain times, Defendants received unlawful commissions or profits relating to the PPP loan program as a result of prioritizing higher dollar loan applications and by failing to adhere to their own representations and the regulations governing the PPP loan program.

38. Plaintiff was harmed and his business affected irreparably due to the mishandling of his application which led to the PPP loan not coming through to assist him.

39. Plaintiff seeks an order from this Court mandating disgorgement of the unjust enrichment received by each defendant.

///
///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

Against all Defendants:

1. For an order declaring Defendants' actions to be unlawful;

2. For declaratory and equitable relief to Plaintiff;

3. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff in the amount of not less than $3,000,000;

4. For costs of suit incurred therein; and,

5. For such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff requests a trial by jury of all claims that are so triable.

Dated: May 14, 2020

Bobby Borisov, in Pro Se